FILED & ENTERED

APR 09 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>Solyman Yashouafar<br><br>Debtor(s).<br><br>David K. Gottlieb<br><br>Plaintiff(s),<br>v.<br><br>Parinaz Yashouafar<br><br>Defendant(s). | CHAPTER 11<br><br>Case No.: 1:16-bk-12255-GM<br>Adv No: 1:17-ap-01050-GM<br><br>**MEMORANDUM OF OPINION ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    February 13, 2018<br>Time:    10:00 AM<br>Courtroom: 303 |

On May 12, 2017, David Gottlieb ("Trustee"), the Trustee in the case of Massoud Yashouafar ("Massoud"), filed this complaint against Parinaz Yashouafar ("Parinaz"), Massoud's wife, as the trustee for the JCBL Trust U/D/T 1/11/00 ("the JCBL Trust" or

-1-

"the Trust").[1] The complaint seeks to recover the assets in the Trust as property of Massoud's bankruptcy estate. On December 12, 2017, the Trustee filed his motion for summary judgment, which was opposed by Parinaz. A hearing was held on February 13, 2018 and the Court continued the matter to May 1, 2018 as a holding date with the intent of issuing a ruling prior to that time.

The Trustee filed a Statement of Uncontroverted Facts and Conclusions of Law ("SUF"), most of which were not objected to in the Defendant's Separate Statement of Uncontroverted Facts and Conclusions.[2] Based on the Trustee's SUF, but modified by the objections, a review of the evidence submitted by the parties in the declarations that they filed, and the docket, the Court finds that the following constitute the Findings of Fact and Conclusions of Law on the Motion for Summary Judgment.[3]

## FINDINGS OF FACT

1. **On August 3, 2016, involuntary petitions were filed against Massoud Yashouafar and his brother Solyman Yashouafar ("Solyman"). On September 12, 2016 each of the Yashouafar brothers stipulated to entry of an order for relief under chapter 11 and appointment of a chapter 11 trustee.**
2. As of the petition date (August 3, 2016), Massoud's schedules show that his scheduled liabilities were substantially greater than his scheduled assets.
3. Excluding the Abselet claim, the claims register shows that Massoud had incurred liabilities in the many millions of dollars as of the end of 2014.
4. If the Court were to assign estimates of net value (if any) to the Debtor's stock and equity interests listed in his bankruptcy schedules, he would still be

---

[1] In order to make it clear who is being referred to, this memorandum uses only first names for the Yashouafars.
[2] Dkt. ##25, 35
[3] Uncontroverted Facts per Trustee in regular type; *Defendant disputes in italics;* and **Court comments in bold**

egregiously insolvent by many millions of dollars.  For example, his asserted interest in ECP Building Inc. was of de minimis or no value.

5. Massoud and Parinaz Yashouafar were married in 1985.

6. At the time of the marriage, Parinaz brought into the marriage only some furniture and a television.

7. From the time that they were married, Massoud and Parinaz have continuously lived in California.

8. On or about January 11, 2000, Parinaz executed and thereby created a Declaration of Trust (the JCBL Trust).  The initial contribution was $10.

9. The Declaration of Trust created a revocable trust with Parinaz as the settlor and trustee.

10. On January 6, 2000 Parinaz's father gave Parinaz and each of her children the sum of $10,000 ($50,000 total **although there are only four checks attached to the opposition**), which funded the JCBL Trust.  **The Trustee agrees that this may not have been the case, but it probably was.**

11. Massoud and Parinaz regularly, if not always, filed joint income tax returns ("Joint Tax Returns") including for tax years 2011 through 2015.

12. The Joint Tax Returns used Massoud's social security number.  *This is objected to if being used to support a claim of community property since the tax filing status of a taxpayer's income is irrelevant to the character of the asset generating the income.*  **Court: this is not a disputed fact although the legal implication drawn (if any) is disputed.**  *Parinaz' taxpayer ID or Social Security Number is also listed as the spouse on the returns.* **Court: this is added by the Defendants and is an undisputed fact.**

13. The JCBL Trust was included among the assets, liabilities, and other disclosures in the Joint tax Returns for at least the tax years ending 2011, 2012, 2013, 2014, and 2015.  The Joint Tax Returns for 2014 and 2015 were filed and submitted under penalty of perjury on about, respectively, November 5, 2015 and

September 13, 2016. **Court: the only objection is whether a return filed under "penalty of perjury" is a guarantee of the accuracy of the return. Objection overruled since this is not a disputed fact.**

14. The Joint Tax Returns do not treat or separately classify the JCBL Trust, but include it as a joint or shared asset of Massoud and Parinaz. The 2014 Joint Tax Return shows that Massoud and Parinaz received and reported dividend income from the JCBL Trust. This will allow Massoud and Parinaz to utilize their combined losses in association with the JCBL Trust as part of their combined losses for future years.

15. On the 2014 Form 1041, the JCBL Trust grantors are identified as "Massoud and Parinaz Yashouafar." Similarly on the California 541, the grantor ID number was that of Massoud. These were signed by Parinaz under penalty of perjury.

16. Because Massoud and Parinaz filed Joint Tax Returns, they chose a tax framework that allowed them to jointly report income and losses from the JCBL Trust.

17. The Declaration of Trust allowed Parinaz, as the settlor, to amend the JCBL Trust.

18. On or about December 18, 2014, the United States District Court issued a Writ of Execution with respect to the approximately $6 million judgment that Howard Abselet held against Massoud.

19. On or about January 2, 2015, Parinaz executed the First Amendment to Declaration of Trust ("First Amendment").[4]

20. Based on the First Amendment, the JCBL Trust was purportedly transformed from a revocable to an irrevocable trust.

21. Parinaz remained the settlor and trustee under the Declaration of Trust and the First Amendment. Parinaz is an insider of the Debtor.

---

[4] Although this statement and date are not specifically included in the Trustee's SUF, there is no dispute that this occurred on or about that date. See Complaint ¶15 (ex. B), admitted in Answer ¶15.

22. Based on the First Amendment and Declaration of Trust, the First Amendment inured to the benefit of, and was made for the benefit of, the JCBL Trust of which Massoud's children are the named beneficiaries of the First Amendment of the JCBL Trust. The children are insiders of the Debtor.

23. Neither Massoud nor Parinaz received any value or consideration in exchange for the First Amendment and Void Transfer. **Court: the objection is well-taken as to the term "Void Transfer." It is otherwise overruled as to the fact of lack of value or consideration to Massoud or Parinaz.**

24. The First Amendment was not recorded with any governmental authority or disclosed at the time to Abselet or any other material creditor of the Debtor.

25. One of the Trust Assets was and is a 20% ownership interest in Milbank Capital I ("Milbank"), which in turn holds a 50.5% interest in Nevada Investment Properties,LP ("NIP").

26. The parties agree that S&R Equities, LP (a company owned by Solyman Yashouafar and his wife) originally owned a 20% interest in Milbank and that Madison Equities, LP (a company owned by Massoud and Parinaz) originally owned a 20% interest in Milbank.

27. The Trust received its 20% ownership interest in Milbank by way of a gift from S&R Equities, LP of a 10% ownership in Milbank and a gift from Madison Equities, LP of a 10% ownership in Milbank.

28. NIP formerly owned the real property known as "Sky Las Vegas," located at 2700 Las Vegas Boulevard South, Las Vegas, NV. This property sold for approximately $5.1 million after the commencement of the Debtor's chapter 11 case.

29. The JCBL Trust's share of the proceeds from the sale of the Sky Las Vegas Property was approximately $479,500 ("JCBL Proceeds").

30. Although the Plaintiff has not traced the assets of the Trust since its inception, the only proceeds in the Trust at the present time are the JCBL Proceeds from the sale of Sky Las Vegas.
31. Pursuant to stipulation, the JCBL Proceeds are being held in an account at Pacific Western Bank in the name of the JCBL Trust, but may not be distributed without further order of the Court.
32. The JCBL Trust, on an undisclosed date, provided Massoud with an unsecured loan that – on the petition date – had a balance due of approximately $655,752, which might indicate Massoud's de facto control of the JCBL Trust and its assets.

## **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is proper when the pleading, discovery, and affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the proceedings. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The facts must be viewed in the light most favorable to the party opposing the motion. *Anderson*, 477 U.S. at 249; *Masson v. New Yorker Magazine,* 501 U.S. 496, 520 (1991). Mere allegations or denials do not defeat a moving party's allegations. *See Gasaway v. Northwestern Mut. Life Ins. Co*., 26 F.3d 957, 960 (9th Cir. 1994).

Summary judgment can be granted to a nonmovant after giving notice and a reasonable time to respond. F.R.Civ.P 56(f)(1), applicable under F.R.Bank.P. 7056.

## **CONCLUSIONS OF LAW**

### **The Trust was initially funded with separate property**

Under California law, all property acquired by a spouse during marriage is presumptively community property. "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property." Cal.Fam.Code §760.

However, if it was acquired by the spouse after marriage but through a gift, it is that spouse's separate property. Cal.Fam.Code §770(a)(2).

> Property that a spouse acquired during the marriage is community property (id., § 760) unless it is (1) traceable to a separate property source (*In re Marriage of Lucas* (1980) 27 Cal.3d 808, 815 [166 Cal. Rptr. 853, 614 P.2d 285]; *In re Marriage of Mix* (1975) 14 Cal.3d 604, 610, 612 [122 Cal. Rptr. 79, 536 P.2d 479]), (2) acquired by gift or bequest (Fam. Code, § 770, subd. (a)(2)), or (3) earned or accumulated while the spouses are living separate and apart (id., § 771, subd. (a)). A spouse's claim that property acquired during a marriage is separate property must be proven by a preponderance of the evidence. (*In re Marriage of Ettefagh* (2007) 150 Cal.App.4th 1578, 1591 [59 Cal. Rptr. 3d 419]; see *Estate of Murphy* (1976) 15 Cal.3d 907, 917 [126 Cal. Rptr. 820, 544 P.2d 956] [a spouse asserting that property acquired by purchase during a marriage is separate property must prove that the property is not community].)

*In re Marriage of Valli*, (2014) 58 Cal. 4th 1396, 1400.

It is undisputed that the Trust was started with separate property in that it was funded by a gift from Parinaz's father to herself and her children. Parinaz was, and remains, the sole settlor of the Trust.

### **As the Settlor of the Trust, Parinaz had the sole right to transform it from a revocable trust to an irrevocable one**

Under California law, Parinaz - as settlor of the revocable trust with the right to revoke or change the beneficiaries – held the sole beneficial interest in the JCBL Trust.

> In *Empire Properties v. County of Los Angeles*, 44 Cal.App.4th 781, 786–87, 52 Cal.Rptr.2d 69 (1996), the court held that for state property tax reassessment purposes, a change in ownership generally does not occur upon creation of a revocable trust or when property is transferred into the revocable trust. Rather, the change in ownership occurs when the trust becomes irrevocable. The court in *Heifetz v. Bank of America*, 147 Cal.App.2d 776, 784, 305 P.2d 979 (1957), noted that when the settlor's power to modify a trust is unrestricted, he can modify it to exclude all the beneficiaries. Consequently, the court held that only the settlor has any beneficial interest in the trust. *Id.* The court stated that when a trust expressly reserves the power to change the beneficiaries, no one acquires any right under the trust instrument, except the settler to administer the trust in accordance with its terms. 147 Cal.App.2d at 784–85, 305 P.2d 979. Finally, in *Title Ins. & Trust Co. v. McGraw*, 72 Cal.App.2d 390, 400, 164 P.2d 846 (1945), the court held that beneficiaries of a revocable trust were not indispensable parties to an action by the settlor/trustor to rescind the trust, as the beneficiaries "had no present interest in the property and would not have any interest therein until the death of the trustor."

*In re Schmitt*, 215 B.R. 417, 422 (B.A.P. 9th Cir. 1997); *see also* Cal. Prob. Code §18200 ('If the settlor retains the power to revoke the trust in whole or in part, the trust property is subject to the claims of creditors of the settlor to the extent of the power of revocation during the lifetime of the settlor.")

### Regardless of the initial assets of the Trust, its content are characterized by their sources

It appears undisputed that the initial assets of the Trust were dissipated prior to the bankruptcy and that all of the money currently held by the JCBL Trust can be traced. In this case, the Trust received its 20 percent share in Milbank by way of two gifts: 10 percent came from S&R (a company owned by Solyman Yashouafar and his wife) and 10 percent came from Madison (a company owned by Massoud and Parinaz, which is presumed to be community property).  Thus the assets of the Trust are traced with 50 percent to separate property of Parinaz and 50 percent to community.   Property deposited into the Trust does not change its legal status to or from community property by virtue of the original status of the Trust unless the Trust instrument provides for this or the Trustee takes affirmative action to transmute property.  Thus, the gift from S&R,

which was a gift to the Trust, was always separate property and the gift from Madison, which was of community property, remained community property unless the funds were sufficiently commingled that they are not traceable. *Estate of Murphy* (1976) 15 Cal.3d 907, 919.

By including the joint tax returns as undisputed facts, the Trustee suggests that because the Trust was included it is evidence that Parinaz had transmuted her separate property interest into community property. The Court disagrees. Community property can be transmuted into separate property and separate property can be transmute into community property, but only through a writing that contains an express declaration that the character or ownership of the property is being changed and that declaration must be made or accepted by the spouse whose interest in the property is adversely affected. Cal.Fam.Code §852. There is no such writing by Massoud transmuting his interest in the Milbank stock and thereby creating a separate interest for Parinaz nor is there one by Parinaz transmuting her interest in the Milbank stock and thereby transforming it into community property. The joint tax return does not meet the requirements for transmutation.

The estate has an interest in community property, pursuant to §541(a)(2). Thus, based upon tracing the source of the property currently in the JCBL Trust, the Trustee appears entitled to the community property half of the funds and Parinaz to the separate property half.

### The Nature of the Trust itself remains separate property, but the content is partially separate property and partially community property

Both parties, however, seek to characterize not merely the funds contained in the JCBL Trust, but the JCBL Trust itself. Each is claiming entitlement to the whole of the JCBL Trust corpus on that basis. Parinaz argues that since the JCBL Trust was established with separate property, it has retained its separate property character, regardless of the source of funds currently in the Trust. The Trustee's argument is more

complicated and will be discussed at more length below. The initial problem with both arguments is that the California precedent I have reviewed traces and characterizes – as separate or community – the property in a trust, but not the trust itself.  *See, e.g., Rickley v. Goodfriend*, 2009 WL 662091, at *4 (Cal. Ct. App. Mar. 16, 2009)("Mr. Goodfriend's separate property retained its character when it was transferred into the Family Trust and remained accessible by his creditors.") The JCBL Trust would be analogous to a bank account in this respect.

The Trustee argues that, if the JCBL Trust contains community property, then it is community property under a three-step analysis:

- Under California's presumption that all property obtained during marriage is community property (Cal. Fam. Code §760), Parinaz' trust-related powers, including the right to revoke, are community property.
- The estate has an interest in all community property, pursuant to §541(a)(2).
- The estate's interest in the right to revoke gives the estate an interest in all JCBL Trust assets.[5]

There are several issues with this analysis.

The Trustee has not cited any authority for his conclusion that Parinaz' right to revoke is community property. The Trustee cites cases holding that (i) a *debtor's* trust-related powers become property of the estate and (ii) a *debtor's* right to revoke a revocable trust gives the estate an interest in the assets in the trust. These holdings are unremarkable and would give *Parinaz'* bankruptcy trustee an interest in the assets of the Trust.  But none of these cases hold that a *nondebtor spouse's* right to revoke a trust is property of estate or gives the estate an interest in all trust assets.

Furthermore, the Trustee's analysis is premised on a global power to revoke the JCBL Trust, but California law speaks of revoking or amending a revocable trust "as to" particular property, *i.e.,* community property and/or separate property.  For example,

---

[5] The Court is aware that the First Amendment making the Trust irrevocable was executed a year and a half before the filing of the involuntary bankruptcy, but need not analyze the effect of this given the resolution of the other issues presented.

"Unless the trust instrument expressly provides otherwise, a power to revoke *as to community property* may be exercised by either spouse acting alone." Cal. Fam. Code § 761; see also, e.g., *Harrell v. Harrell*, 2015 WL 5051138, at *8 (Cal. Ct. App. Aug. 27, 2015); *Kunit v. Kunit*, 2009 WL 874611, at *2 (Cal. Ct. App. Apr. 2, 2009).  Thus, while the right to revoke the JCBL Trust as to community property may well be community property and thus property of the estate, the right to revoke as to Parinaz' separate property must be analyzed independently.

In fact, even if it could be characterized as community property under the type of sweeping characterization advocated by the Trustee, the separate property half of the JCBL Trust would not be property of the estate. Section 541(a)(2) is not a blanket inclusion of community property in the estate. Section 541(a)(2) includes "all interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is under the sole, equal, or joint management and control of the Debtor" or is liable for claims against the Debtor. Even though the Trust provided Massoud with an unsecured loan at some time prior to the petition date (see UDF #32), this is not evidence that he had any level of control of the Trust or its assets. The Trust was not under Massoud's "sole, equal, or joint control," it was only under the control of Parinaz. Further, only the community portion of the assets in the JCBL Trust would be subject to the claims of Massoud's creditors.

## RULINGS ON EVIDENTIARY OBJECTIONS

Declaration of Haleh Fathi:

Overrule as to ¶6.  Sustain the balance since there is insufficient evidence of the declarant's actual knowledge to support the statements made in this declaration.

Declaration of Parinaz Yashouafar:

Overrule as to ¶¶ 1, 3

Sustain as to ¶¶ 2, 4

Declaration of Massoud Yashouafar:

The major problem here is that there is no declaration of personal knowledge and of the details of how he obtained that personal knowledge. As to the lack of supporting documents, there are ways to still get the information into evidence, but this declaration fails to do so. There is no date as to when Milbank Capital I was formed, so ¶4 is not a relevant statement.

### CONCLUSION

Grant summary judgment to the Trustee as to 50 percent of the assets of the JCBL Trust and grant summary judgment to Parinaz Yashouafar as to 50 percent of the assets of the JCBL Trust. The JCBL Trust itself remains the separate property of Parinaz.

###

Date: April 9, 2018

_____
Geraldine Mund
United States Bankruptcy Judge